PEARSON, J.

### UNITED STATES DISTRICT COURT
### NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| JOSEPH EDWARD DOWD, | ) | |
| | ) | CASE NO. 4:24CV2141 |
| Plaintiff, | ) | |
| | ) | JUDGE BENITA Y. PEARSON |
| v. | ) | |
| | ) | **MEMORANDUM OF OPINION** |
| WARDEN DAVIS, *et al.*, | ) | **AND ORDER** |
| | ) | [Resolving ECF Nos. 17, 22, 23, 24, 25, |
| Defendants. | ) | and 26] |

In April 2025, *Pro Se* Plaintiff Joseph Edward Dowd, a state prisoner currently

incarcerated at the Southern Ohio Correctional Facility, proceeding *in forma pauperis*, filed an

Amended Complaint (ECF No. 12 -1) under 42 U.S.C. § 1983, which was deemed filed as of

April 22, 2025. *See* Order (ECF No. 13) at PageID #: 146. The alleged incidents set forth in

ECF No. 12 -1 took place at the Trumbull Correctional Institution ("TCI"), a State owned and

operated correctional institution. Plaintiff is suing each Defendant in their individual and official

capacities for claims and violations of his First, Fourth, Eighth, and Fourteenth Amendment

rights for injuries he incurred while Plaintiff was committing infractions of the rules for inmate

conduct.

(4:24CV2141)

Plaintiff alleges that Warden Davis failed to ensure the safety and security of TCI after receiving notice *via* the kite and grievance systems by failing to act, protect or intervene.  *See* ECF No. 12-1 at PageID #: 138, ¶ 2.  Plaintiff asserts that on March 15, 2023, between 8:50 p.m. and 9:00 p.m., Corrections Officers Court and Krotzer conducted a pat down of Plaintiff due to smelling smoke in the area of his cell.  *See* ECF No. 12-1 at PageID #: 138, ¶ 3.  Plaintiff claims that during the pat down officers accused him of disobeying orders and perceived that he "threw his right elbow at defendants Court and Krotzer" (something Plaintiff denies) and he was then sprayed in the face a total of five (5) times with a large amount of OC spray in that 10 minute time span.  According to Plaintiff, Corrections Officers Court and Krotzer became aggressive, threw him to the floor, and began punching Plaintiff in the back of the head.  Corrections Officer Reghetti responded and punched him in the face.  Plaintiff alleges he suffered a broken finger, loose teeth, and nerve damage in his back.  *See* ECF No. 12-1 at PageID #: 138-39, ¶ 3.  Plaintiff asserts he sent kites to Captain Wadolowski that went unanswered.  He also claims other Defendants ignored his communications.  *See* ECF No. 12-1 at PageID #: 140, ¶ 4.

The Rules Infraction Board ("RIB") reviewed video footage and the Conduct Report (ECF No. 1-2), as well as Plaintiff's testimony.  Based on the evidence, the RIB found Plaintiff had violated two rules of inmate conduct:  Rule 20--physical resistance to a direct order; and Rule 21--disobedience to a direct order regarding this incident.[1]  The RIB also found Plaintiff not guilty of the Rule 4 violation--causing, or attempting to cause, physical harm to another.  *See* Disposition of the Rules Infraction Board ("RIB") (ECF No. 1-3).  The RIB "[found Plaintiff

---

[1]  *See* Ohio Admin. Code § 5120-9-06.

(4:24CV2141)

a.k.a.] offender Dowd guilty of a R-21, R-20, not guilty of a R-4.  The board believes after a cell search was conducted offender Dowd did not comply with directives to cuff up as the officers directed.  The board believes after viewing camera footage a R-4 was not witnessed.  The board believes OC Spray was utilized to gain compliance, and signal 3 was called.  Offender Dowd physically resisted to give officers his arm so he could be cuffed."  ECF No. 1-3.

Plaintiff is seeking monetary damages and court costs as a result of this incident.  *See* ECF No. 12-1 at PageID #: 140-41, ¶ 5.

### I. Corrections Officers Court and Krotzer

On August 18, 2025, the original summons and copies of the Amended Complaint (ECF No. 12-1) were issued to the U.S. Marshal for service upon Corrections Officers Court and Krotzer.  *See* ECF No. 29.  On August 20, 2025, service of process on Corrections Officers Court and Krotzer was returned unexecuted by the U.S. Marshal because they no longer work at TCI.  *See* Return of Service (ECF No. 30).[2]  The U.S. Marshal filed a letter received from the ODRC Legal Services that provides:  "Please be advised of the Fed Ex mail envelopes addressed to A. Court and C.O. Krotzer were accepted in error by the warehouse staff.  A. Court and C.O. Krotzer no longer work at TCI.  Mail was returned to United States [Marshal] Service by certified mail on 8/25/2025."  *See* ECF No. 30-1 (brackets added).  Thereafter, a copy of ECF No. 30 was mailed to Plaintiff on September 8, 2025.

---

[2]  Plaintiff acknowledges in the Amended Complaint that Corrections Officers Court and Krotzer no longer work at TCI.  *See* ECF No. 12-1 at PageID #: 140, ¶ 3 ("Officers (both Court and Krotzer) have resigned shortly per incident"); *see also* Response to Order (ECF No. 27) at PageID #: 255 ("either of these (2) C.O.'s didn't work there no more, quit after incident of claim").

3

(4:24CV2141)

The Court previously advised Plaintiff that he is responsible for providing the Court with the current address of the party he wishes to serve.  *See* Order (ECF No. 13) at PageID #: 147 (citing *Paulson v. Doe*, No. 96 Civ. 7552 (KMW)(RLE), 1997 U.S. Dist. LEXIS 15733, at \*4 (S.D.N.Y. Oct. 3, 1997) ("it is not the responsibility of the [Court's] Pro Se Office to provide plaintiffs with the names and addresses of the defendants which they sue").  "[N]either the Marshal[s] Service nor the Court may engage in investigatory efforts on behalf of the parties to a lawsuit as this would improperly place the Court in the role of an advocate." *DeRoche v. Funkhouser*, No. 2:06cv01428, 2008 WL 4277659, at \*1 (D.Ariz. Sept.16, 2008) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir.1991)); *see also* *Hill v. Ortiz*, No. 07-cv-00571-LTB-CBS, 2008 WL 2020289, at \* 6 (D.Colo. May 9, 2008) (court need not require the U.S. Marshals Service or Clerk of Court to search for defendants).

An incarcerated *pro se* plaintiff is entitled to rely on the U.S. Marshals Service for service of the summons and complaint.  *Puett v. Blandford*, 912 F.2d 270, 275 (9th Cir.1990).  The Court also previously cautioned Plaintiff that typically the plaintiff must provide the necessary information and documentation to effect service.  *See* ECF No. 13 at PageID #: 148.  It is not the responsibility of the Marshals Service to obtain addresses.  A *pro se* plaintiff is entitled to rely on the Marshals Service for service only to the extent plaintiff has provided the information needed to help effectuate service.  *See* *id.*; *Carr v. City of Greenville*, No. 5:01-CT-338-H, 2002 WL 31097453, at \*1 (E.D.N.C. Jan. 28, 2002), *aff'd sub nom.*, 33 Fed.Appx. 140 (4th Cir. 2002) ("[i]t is not the responsibility of the Marshals Service to obtain addresses.").  To date, Plaintiff has still not provided addresses for service of process upon Corrections Officers Court and Krotzer.

4

(4:24CV2141)

Plaintiff was advised that if he could not show good cause why service was not made upon Corrections Officers Court and Krotzer, the action would be dismissed as to Corrections Officers Court and Krotzer only.  *See* ECF No. 13 at PageID #: 148.

The file in this case continues to show no service of the summons and Amended Complaint (ECF No. 12-1) upon Corrections Officers Court and Krotzer.

Accordingly, the Court dismisses this case without prejudice as to Corrections Officers Court and Krotzer.

## II.  ECF No. 17

Pending is Defendants Deputy Warden Theodore Jackson, Investigator Waylon Wine, Captain Michael Wadolowski, Corrections Officer Reghetti, Warden Davis, and Interested Party State of Ohio's[3] Motion to Dismiss Amended Complaint (ECF No. 17) pursuant to Fed. R. Civ. P. 12(b)(6).  The Court has been advised, having reviewed the record, the parties' briefs, and the applicable law.  For the reasons below, the motion is granted in part and denied in part.

### A.  Standard of Review

As earlier indicated*, pro se* pleadings are generally liberally construed and held to less stringent standards than formal pleadings drafted by lawyers, *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011), but even a *pro se* complaint must set forth sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face to survive dismissal.  *See Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007),

---

[3]  The State of Ohio appears as an interested party pursuant to Ohio Rev. Code § 109.361.

5

(4:24CV2141)

for determining a motion to dismiss under Fed. R. Civ. P. 12(b)(6) governs dismissals for failure to state a claim under 28 U.S.C. § 1915(e)(2)(B)).

A cause of action fails to state a claim upon which relief may be granted when it lacks "plausibility in th[e] complaint." *Twombly*, 550 U.S. at 564. A pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 677-78 (quoting Fed. R. Civ. P. 8(a)(2)). Plaintiff is not required to include detailed factual allegations, but must provide more than "an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* at 678. A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557. It must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Twombly*, 550 U.S. at 556. When a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.' " *Id.* at 557 (brackets omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)). The Court "need not accept as true a legal conclusion couched as a

6

(4:24CV2141)

factual allegation or an unwarranted factual inference." *Handy-Clay v. City of Memphis, Tenn.*, 695 F.3d 531, 539 (6th Cir. 2012) (citations and internal quotation marks omitted).

### B. Analysis

#### 1. Eighth Amendment Claims for Failure to Protect

To state an Eighth Amendment claim for failure to protect, Plaintiff must show that prison officials acted with a deliberate indifference to a substantial risk of serious harm. *Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)) (further citation omitted). This showing contains both an objective and subjective component. *Dickerson v. Kentucky Corr. Psychiatric Ctr.*, No. 17-5412, 2017 WL 8792665, at *2 (6th Cir. Oct. 12, 2017) (citing *Curry*, 249 F.3d at 506)). In a failure to protect case, the objective component requires Plaintiff to show that he was incarcerated under conditions posing a substantial risk of harm, and the subjective component requires Plaintiff to show that Defendants knew he faced a substantial risk of harm but failed to take reasonable steps to abate it. *Farmer*, 511 U.S. at 834, 837.

#### a. Objective Component

Whether the objective component is analyzed based upon the severity of Plaintiff's injury, or whether there was an objectively substantial risk of harm to the inmate before the injury, Plaintiff alleges no facts from which the Court could infer that the objective component of the analysis is satisfied. *See Holder v. Saunders*, No. 13-38-ART, 2014 WL 7177957, at *5 (E.D. Ky. Dec. 16, 2014) (citing *Curry*, 249 F.3d at 506 (injuries suffered by inmate were serious enough to satisfy objective prong of *Farmer*) and *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (analyzing whether there was an objectively substantial risk of harm to the inmate before

7

(4:24CV2141)

the injury occurred without regard to the injury incurred)); *Cordle v. Clark*, No. 6:17-23-DCR, 2018 WL 988075, at *3 (E.D. Ky. Feb. 20, 2018) (noting tension in Sixth Circuit case law on how to frame the objective inquiry) (citing *Holder*, 2014 WL 7177957, at *5).

Plaintiff alleges Warden Davis was the Acting Warden at TCI between March 15, 2023 and April 21, 2023, and that Plaintiff "made attempts via the [ ] kite and grievance system of retaliatory conduct by defendants named further without redress." ECF No. 12-1 at PageID #: 138, ¶ 2. Plaintiff attached a number of exhibits to his original Complaint (ECF No. 1) and incorporated those attachments (ECF Nos. 1-2 through 1-9) into the Amended Complaint (ECF No. 12-1). But none of the attachments show a kite *prior* to the incident on March 15, 2023. Therefore, Plaintiff failed to establish that he specifically identified he was in danger. Thus, Defendants did not know or should have known that Plaintiff was in danger and that they had a duty to protect him. The closest Plaintiff comes to a prior notification is a disorganized kite on March 11, 2023 to Defendant Wadolowski wherein Plaintiff states, in a disconnected manner, he felt like he was being harassed. *See* ECF No. 12-2.[4] In that kite, Plaintiff's acknowledges that Captain Wadolowski responded to Plaintiff's allegations made in ECF No. 12-2. Contraband

---

[4] Plaintiff filed a second kite dated March 11, 2023 (ECF No. 19-1), which states: "2nd Shift Captain supervisor I have to include this number of the I.C.R. wrote yesterday because the c.o. stated to me Dowd get some dentures., then at the last count . 9.00 oclock lockdown .,, the SAME c.o. Court came into my cell while I was in there. The camera would show it . The last count ., meaning lockdown lock up. In .,., enter my cell WHILE I WAS IN THERE." Captain Wadolowsk responded nine (9) days later: "Please refer to page 7 of the inmate handbook which states that, 'Cell searches are done on a random basis; however, this can also be done because of information obtained or reasonable suspicion. Offender does not need to be present during shakedown.' Your cellmate's behavior and activities have given staff reasonable suspicion to search the cell. In addition, please follow-up with your unit staff (sergeant) if there are any type of issues with your cellmate." *See also* Kite dated March 12, 2023 (ECF No. 19-2).

(4:24CV2141)

was found on the bottom bunk in his housing assignment and Plaintiff received a conduct report

for a violation of Rule 39. *See* ECF No. 12-2. This cannot be considered proof that any

Defendant, let alone Warden Davis, Captain Wadolowski, Deputy Warden Jackson or

Investigator Wine, were aware that Plaintiff was in danger and disregarded that knowledge. The

lack of any notice provided to Warden Davis, Deputy Warden Jackson, and Investigator Wine of

Plaintiff's perceived danger, and that Captain Wadolowski allegedly was made aware through a

disorganized, rambling kite and failed to protect Plaintiff, fails to support a plausible Eighth

Amendment claim. *See Sweeting v. Erdos*, No. 1:20-cv-290, 2020 WL 1957356, at *3 (S.D.

Ohio April 23, 2020), *report and recommendation adopted*, 2020 WL 3971548 (S.D. Ohio July

14, 2020) (dismissing failure to protect claims for failure to state a claim because plaintiff had

not alleged facts that plausibly suggested that defendants were aware that a correctional officer

presented a substantial risk of harm to plaintiff); *Mosquera v. Delgado*, No. 4:09CV1402, 2010

WL 2010973, at *4 (N.D. Ohio April 30, 2010) (Pearson, M.J.) ("When an inmate fails to allege

that he received specific threats and that he communicated those specific threats or fears to prison

personnel, the Complaint fails to state an Eighth Amendment claim for failure to protect."),

*report and recommendation adopted*, No. 4:09CV1402, 2010 WL 2010969 (N.D. Ohio May 20,

2010). "[T]o establish a violation of the Eighth Amendment, [Plaintiff] must show that

Defendants 'actually knew' that he 'faced a substantial risk of serious harm and disregarded that

risk by failing to take reasonable measures to abate it." *Mosquera*, 2010 WL 2010973, at *10

(quoting *Farmer*, 511 U.S. at 847).

Accordingly, the Court concludes that Plaintiff has not alleged facts which, if believed,

are sufficient to state a plausible claim with respect to the objective component of a deliberate

(4:24CV2141)

indifference analysis.  But, even if the alleged facts could be construed to satisfy the objective component, Plaintiff's deliberate indifference claim fails on the subjective component.

### b. Subjective Component

The subjective component of the deliberate indifference analysis requires plausible allegations that, if believed, show that prison officials knew of, but disregarded, a substantial risk to an inmate's  health or safety.  *Wilson v. Seiter*, 501 U.S. 294, 302-03 (1991).  Deliberate indifference "entails something more than mere negligence."  *Farmer*, 511 U.S. at 835.  An official acts with deliberate indifference when he acts with "criminal recklessness," a state of mind that requires that the official act with conscious disregard of a substantial risk of serious harm.  *Id.* at 837.  This standard is met if "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  *Id.*; *Mangum v. Repp*, 674 Fed.Appx. 531, 537 (6th Cir. 2017).

Plaintiff does not allege that Defendants were aware of any potential danger to him, and consciously disregarded that risk.  The Amended Complaint (ECF No. 12 -1) contains no allegations from which the Court could infer that Defendants were subjectively aware that Plaintiff was "very likely" or in "imminent danger."  *See Baze v. Rees*, 553 U.S. 35, 49-50 (2008); *see also Stubbs v. Ohio Dep't of Rehab. & Corr.*, No. 1:17-CV-813, 2018 WL 575910, at *3 (S.D. Ohio Jan. 26, 2018) (no Eighth Amendment claim for failure to protect when plaintiff had been previously attacked by another inmate, but the allegation that the same inmate wanted to put plaintiff in the hospital again was insufficient to show that a future attack was likely)

10

(4:24CV2141)

(citations omitted), *report and recommendation adopted*, No. 1:17CV813, 2018 WL 1305466 (S.D. Ohio March 12, 2018).

In the absence of alleged facts from which the Court could infer that Defendants were subjectively aware that Plaintiff faced a substantial risk of being assaulted, and their failure to protect him from that risk, Plaintiff fails to state an Eighth/Fourteenth Amendment deliberate indifference failure to protect claim, and that claim must be dismissed.

## 2. Individual Capacity Claims

Individual capacity claims seek to hold a defendant personally liable for damages. A plaintiff cannot establish the liability of any defendant absent a clear showing that the defendant was personally involved in the activities which form the basis of the alleged unconstitutional behavior. *Rizzo v. Goode*, 423 U.S. 362, 371 (1976); *Mullins v. Hainesworth*, No. 95-3186, 1995 WL 559381 (6th Cir. Sept. 20, 1995) (order). All Exhibits submitted by Plaintiff show that all of his kites and grievances were answered. *See* ECF Nos. 1-4 through 1-9, 12-2, 19-1, and 19-2. Because Plaintiff has not alleged facts to suggest that Deputy Warden Jackson, Investigator Wine, Captain Wadolowski, or Warden Davis personally participated in any of the actions giving rise to the Amended Complaint (ECF No. 12 -1), the claims asserted against them in their individual capacities are dismissed.

## 3. *Respondeat Superior*

The only connection that Deputy Warden Jackson, Investigator Wine, Captain Wadolowski, and Warden Davis have to the facts of this case is that they were in supervisory roles at TCI when the alleged incident occurred; Plaintiff fails to assert any other allegations against them. The doctrine of *respondeat superior* does not apply in § 1983 lawsuits to impute

11

(4:24CV2141)

liability to supervisory personnel. *See Wingo v. Tenn. Dep't of Corr.*, 499 Fed.Appx. 453, 455 (6th Cir. 2012) (per curiam) (citing *Polk Cty. v. Dodson*, 454 U.S. 312, 325 (1981)).  "In order to find supervisory personnel liable, a plaintiff must allege that the supervisors were somehow personally involved in the unconstitutional activity of a subordinate, or at least acquiesced in the alleged unconstitutional activity of a subordinate."  *Id.* (citation omitted).  Section 1983 liability must be based upon active unconstitutional behavior, not upon a mere failure to act.  *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999) (citing *Leach v. Shelby Cty. Sheriff*, 891 F.2d 1241, 1246 (6th Cir. 1989)).  Here Plaintiff only alleges that Warden Davis "would sneak walk by" his cell and not make himself available and that Captain Wadolowski ignored Plaintiff's attempts to reach out.  ECF No. 12-1 at PageID #: 140, ¶ 4.

Moreover, "liability under § 1983 must be based on active unconstitutional behavior and cannot be based upon 'a mere failure to act.' "  *Shehee v. Luttrell*, 199 F.3d 295, 300 (6th Cir. 1999) (quoting *Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998), *cert. denied*, 526 U.S. 1115 (1999)).  When the only involvement of prison officials concerned the denial of administrative grievances, they cannot be liable under § 1983 based solely on a theory that failure to act constituted an acquiescence in the unconstitutional conduct.  *Id.*  In other words, even a supervisory official who is aware of the unconstitutional conduct of his subordinates, but fails to act, generally cannot be held liable in his individual capacity.  *Lillard v. Shelby County Bd. Of Educ.*, 76 F.3d 716, 727-28 (6th Cir. 1996) (citing *Bellamy v. Bradley*, 729 F.2d 416, 421 (6th Cir.), *cert. denied*, 469 U.S. 845 (1984)).

12

(4:24CV2141)

### 4. Eighth Amendment Claim for Excessive Force

An Eighth Amendment excessive force claim "has objective and subjective components." *Johnson v. Sootsman*, 79 F.4th 608, 615 (6th Cir. 2023). The objective component requires "sufficiently serious" harm. *Id.* Although the harm need not be " 'extreme' or 'serious,' " the Eighth Amendment "does not apply to '*de minimis* uses of physical force' so long as this force does not repulse 'the conscience of mankind.' " *Id.* at 616 (quoting *Hudson v. McMillian*, 503 U.S. 1, 9-10 (1992)). The subjective component requires "sufficiently volitional actions" by prison officials. *Id.* at 615. The Eighth Amendment prohibits force used "maliciously and sadistically to cause harm" rather than in a "good-faith effort to maintain or restore discipline." *Id.* at 616 (quoting *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010) (per curiam)).

The Eighth Amendment prohibition on cruel and unusual punishment "proscribes the unnecessary and wanton infliction of pain against prisoners." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *see also Whitley v. Albers*, 475 U.S. 312, 319 (1986). Relevant factors in determining whether a prison official's alleged conduct constitutes excessive force in violation of the Eighth Amendment include the need for the application of force, the relationship between the need and the amount of force that was used, the extent of the injury actually inflicted, the threat reasonably perceived by the prison officials, and any efforts made to temper the severity of the forceful response. *See Hudson*, 503 U.S. at 7; *Whitley*, 475 U.S. at 321; *Richmond v. Settles*, 450 Fed.Appx. 448, 453 (6th Cir. 2011).

The Supreme Court has noted that not "every malevolent touch by a prison guard gives rise to a federal cause of action." *Hudson*, 503 U.S. at 9. Prison officials may often be required to use physical contact to insure prison security. *Id.* at 9. Moreover, "[t]he Eighth Amendment's

13

(4:24CV2141)

prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition *de minimis* uses of physical force, provided that the use of force is not of a sort 'repugnant to the conscience of mankind.' " *Id.* at 9-10 (quoting *Whitley*, 475 U.S. at 327). Instead, the physical contact will rise to the level of an Eighth Amendment violation only if the contact represents an "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976) (joint opinion Stewart, Powell, and Stevens, JJ.)).  Generally, if the force applied is grossly disproportionate to the offense committed by the prisoner, a plaintiff states a cause of action for use of excessive force. *Rhodes v. Chapman*, 452 U.S. 337, 345 (1981).

Plaintiff alleges Corrections Officer Reghetti used excessive force when he punched him in the face "causing immediate swelling contributing to my already chronic issues." ECF No. 12-1 at PageID #: 139, ¶ 3.  Plaintiff maintains this assault was unprovoked and, further, that the degree of force used was unnecessary given that he was already on the floor and restrained by Corrections Officers Court and Krotzer.  *See* ECF No. 1-4 ("Officers of Assaulting me on the ground, as I lay still on the ground not moving") (capitalization altered).  He asserts he "receive, suffer decline, loss eye vision per direct incident, documented medically, plaintiff constantly feels nerve damage in neck back, loosened teeth per incident result later to be pulled, (1) broken finger resulted grew back deformed." ECF No. 12-1 at PageID #: 140, ¶ 3.  He contends he "had xray done to my neck and spineneck, constantly in pain . . . vision decline serious . . . waking up every morning with [blurry] eyes from an assault and your neck and spine hurting."  Kite dated April 19, 2023 (ECF No. 1-8) (brackets added).

(4:24CV2141)

On the face of the Amended Complaint (ECF No. 12 -1), the Court finds these allegations meet the pleading standards of Fed. R. Civ. P. 8 to state a plausible claim against Corrections Officer Reghetti for use of excessive force in violation of the Eighth Amendment.  Accordingly, this claim will be permitted to proceed for further development against Corrections Officer Reghetti in his individual capacity.  *See Napier v. Bobby*, No. 4:12CV0555, 2012 WL 2905995, at *4-6 (N.D. Ohio July 16, 2012) (Pearson, J.) (finding complaint stated a plausible Eighth Amendment claim for excessive force).

### 5.  The Eleventh Amendment Bars Plaintiff's Official Capacity Claims

The Amended Complaint alleges that Deputy Warden Jackson, Investigator Wine, Captain Wadolowski, Corrections Officer Reghetti, and Warden Davis, in their official capacity, violated his constitutional rights.  *See* ECF No. 12-1 at PageID #: 138 at PageID #: 138, ¶ 1.  The Eleventh Amendment to the United States Constitution is a bar to the imposition of liability upon state agencies and state officers sued in their official capacities.  *Latham v. Office of Atty. Gen. of State of Ohio*, 395 F.3d 261, 270 (6th Cir. 2005); *Bouquett v. Clemmer*, 626 F. Supp. 46, 48 (S.D. Ohio 1985).

Under the Eleventh Amendment, federal courts lack jurisdiction to hear suits by private citizens against a state unless the state explicitly consents to the suit or unless Congress, pursuant to a valid exercise of power, abrogates the States' sovereign immunity.  *Port Auth. Trans-Hudson Corp. v. Feeney*, 495 U.S. 299, 304 (1990).  Ohio has not waived its sovereign immunity.  *McCormick v. Miami Univ.*, 693 F.3d 654, 664 (6th Cir. 2012).

An entity acting as an "arm of the State" enjoys Eleventh Amendment immunity from federal suit to the same extent as the state itself.  *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir.

15

(4:24CV2141)

2005).  And this Eleventh Amendment immunity extends to state officials sued in their official

capacity because "a suit against a state official in his or her official capacity is not a suit against

the official but rather a suit against the official's office" and is therefore "no different from a suit

against the State itself."  *Will v. Mich. Dept. of State Police*, 491 U.S. 58, 71 (1989) (citations

omitted).

Here, Deputy Warden Jackson, Investigator Wine, Captain Wadolowski, Corrections

Officer Reghetti, and Warden Davis are state officers sued in their official capacities and entitled

to Eleventh Amendment immunity.  Accordingly, any claims raised against Defendants in their

official capacity and seeking monetary damages must be dismissed.

### 6. Qualified Immunity

Deputy Warden Jackson, Investigator Wine, Captain Wadolowski, Corrections Officer

Reghetti, and Warden Davis argue they are entitled to qualified immunity because Plaintiff fails

to show a constitutional right was violated, and Deputy Warden Jackson, Investigator Wine,

Captain Wadolowski, and Warden Davis were not personally involved.

Once a defendant raises qualified immunity, the burden shifts to the plaintiff, who must

demonstrate both that the official violated a constitutional or statutory right, and that the right

was so clearly established at the time of the alleged violation that every reasonable official would

have understood that what he was doing violated that right.  *Ashcroft v. al-Kidd*, 563 U.S 731,

741 (2011).  If the plaintiff fails to carry this burden as to either element of the analysis, qualified

immunity applies and the official is immune.  *Cockrell v. City of Cincinnati*, 468 Fed.Appx. 491,

494 (6th Cir. 2012).  "Clearly established law" should not be defined "at a high level of

generality" and the clearly established law must be "particularized" to the facts of the case.

16

(4:24CV2141)

*Ashcroft*, 563 U.S. at 742; *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).  While generally a court should look to binding precedent with sufficiently similar facts to the case in front of it, "[s]ome violations of constitutional rights are so obvious that a 'materially similar case' is not required for the right to be clearly established."  *Hearring v. Sliwowski*, 712 F.3d 275, 280 (6th Cir. 2013) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004)); *see also Taylor v. Riojas*, 592 U.S. 7, 8-9 (2020) (per curiam) (holding that, in an outrageous case, a "general constitutional rule" will serve as sufficient notice to an officer claiming qualified immunity) (quoting *Hope v. Pelzer*, 536 U.S. 730, 741 (2002)).

In *Saucier v. Katz*, 533 U.S. 194 (2001), the Supreme Court established a two-step inquiry for determining whether an official is entitled to qualified immunity.  *Id.* at 201.  The Court must consider (1) whether, viewing the evidence in the light most favorable to the injured party, a constitutional right has been violated; and (2) whether that right was clearly established.  *Id.*; *Mosier v. Evans*, 90 F.4th 541, 546 (6th Cir. 2024).  In *Pearson v. Callahan*, 555 U.S. 223 (2009), the Supreme Court held that while the sequence set forth in *Katz* is often appropriate, it is not mandatory, and courts have discretion to decide which of the two prongs of the qualified immunity analysis to address first.  *Id.* at 236; *Williams v. City of Grosse Pointe Park*, 496 F.3d 482, 485 (6th Cir. 2007) (if a plaintiff is "unable to establish sufficient facts to support a finding of a constitutional violation by the defendant, the inquiry ceases, and the court must award judgment to the defendant").

In addition, to prevail in a § 1983 action, a plaintiff typically must show that the defendants were "personally involved in the [alleged] constitutional violations."  *Binay v. Bettendorf*, 601 F.3d 640, 650 (6th Cir. 2010); *see also Bennett v. Schroeder*, 99 Fed.Appx. 707,

17

(4:24CV2141)

712-13 (6th Cir. 2004) ("[i]t is well-settled that to state a cognizable Section 1983 claim, the

plaintiff must allege some personal involvement by [ ] each of the named defendants");

*Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206-207 (6th Cir. 1998) (district court properly

granted defendants' motion for summary judgment when the materials submitted by Plaintiff in

response failed to show, in any respect, that the individual defendants encouraged or condoned

any alleged constitutional violations).  Plaintiff fails to show personal involvement by Deputy

Warden Jackson, Investigator Wine, Captain Wadolowski, and Warden Davis in the complained

of conduct that forms the basis of the alleged constitutional violations.

The Court does not address the qualified immunity argument of Deputy Warden

Jackson, Investigator Wine, Captain Wadolowski, and Warden Davis because it concludes, for

the reasons set forth above, that Plaintiff has not sustained his burden to demonstrate a

deprivation of constitutional rights regarding his claims against them.

With regard to whether qualified immunity shields Corrections Officer Reghetti from

liability, "[e]ach defendant's liability must be assessed individually based on his own actions."

*Hart v. Hillsdale Cnty.*, 973 F.3d 627, 639 (6th Cir. 2020) (quoting *Binay v. Bettendorf*, 601 F.3d

640, 650 (6th Cir. 2010)) (brackets in original).  "The test is whether, reading the complaint in

the light most favorable to the plaintiff, it is plausible that an official's acts violated the

plaintiff's clearly established constitutional right."  *Heyne v. Metro. Nashville Pub. Sch.*, 655

F.3d 556, 562-63 (6th Cir. 2011).  The Sixth Circuit warns that a determination of whether

qualified immunity shields an officer from liability is often better left for summary judgment, as

it may be "perilous" to determine whether the qualified immunity defense applies prior to

development of the factual record.  *Hart*, 973 F.3d at 635.

(4:24CV2141)

Plaintiff alleges that Corrections Officers Court and Krotzer became aggressive, threw him to the floor, and began punching Plaintiff in the back of the head.  Thereafter, Corrections Officer Reghetti responded and punched him in the face "causing immediate swelling contributing to my already chronic issues."  *See* ECF No. 12-1 at PageID #: 139, ¶ 3.  The Court concludes, at this stage of the litigation, Corrections Officer Reghetti is not entitled to qualified immunity.  *See Easterly v. Thomas*, No. 3:20-CV-00065-JRG-HBG, 2021 WL 4447633, at *33 (E.D. Tenn. Sept. 28, 2021) (*citing Hudson*, 503 U.S. at 4, 10 (holding that prisoner's allegation that an officer punched him while another officer restrained him was actionable under the Eighth Amendment).

### III.  ECF Nos. 22 and 23

Plaintiff's Motions for Extension of Time (ECF Nos. 22 and 23) are substantially similar and were received for filing on June 20, 2025 and June 24, 2025, respectively.  Plaintiff moves the Court for an extension of time to file a motion to show cause.  To date, however, Plaintiff has not filed a motion to show cause.  Accordingly, ECF Nos. 22 and 23 are denied.

### IV.  ECF No. 24

In their Motion to Stay (ECF No. 24), Defendants Deputy Warden Theodore Jackson, Investigator Waylon Wine, Captain Michael Wadolowski, Corrections Officer Reghetti, Warden Davis, and Interested Party State of Ohio move the Court to stay all proceedings, including the period to respond to ECF Nos. 22 and 23 and any further filings of Plaintiff, until Defendants' Motion to Dismiss (ECF No. 17) is ruled upon.  Given the within ruling, ECF No. 24 is denied as moot.

(4:24CV2141)

### V.  ECF No. 25

Plaintiff's Motion to Subpoena State Records and Video Block Footage (ECF No. 25) seeks to conduct discovery prior to a Fed. R. Civ. P. 26(f) conference and while a motion to dismiss is pending.  He seeks to serve a subpoena on Defendants to obtain "facts, records, video, Discovery for Footage of Events from Start to Finish, Block Footage of the event of assault of 3/15/23 per conduct # TCI-23-002125.  Also all records and as well BWC of date of occurrence." ECF No. 25 at PageID #: 247.

Discovery may be made prior to the Rule 26(f) conference in accordance with Rule 26(a)(1)(B)(iv) as Plaintiff is a self-represented person in custody at the time the request was made.  "[P]risoners proceeding *pro se* are exempt from the constraints on the timing of discovery set forth in Federal Rule of Civil Procedure 26(d)(1)."[5]  *Perry v. Rousseau*, No. 18-CV-12914, 2019 WL 3561920, at *1 (E.D. Mich. Aug. 6, 2019).

LR 37.1 (and its Federal counterpart) generally require that parties meet and confer before filing any discovery motion.  *See Curran v. Miller*, No. 5:23-cv-00158-BJB-LLK, 2025 WL 4065471, at *1 (W.D. Ky. Oct. 9, 2025) (denying motion to compel discovery because plaintiff had not complied with a Local Rule and Fed. R. Civ. P. 37).  ECF No. 25 does not, however, comply with LR 37.1, which outlines a process for resolution of discovery disputes – steps that must be taken in advance of the filing of a discovery motion.

---

[5]  Fed. R. Civ. P. 26(d)(1) provides:  "A party may not seek discovery from any source before the parties have conferred as required by Rule 26(f), except in a proceeding exempted from initial disclosure under Rule 26(a)(1)(B), or when authorized by these rules, by stipulation, or by court order."  Under Rule 26(a)(1)(B)(iv), "an action brought without an attorney by a person in the custody of the United States, a state, or a state subdivision" is exempt from initial disclosure.

20

(4:24CV2141)

The first step requires the parties to make a sincere, good faith effort to resolve the dispute.  Next, if the parties' sincere, good faith efforts have failed to resolve the dispute, the Court should be given informal notice, along with a certification of the effort made.  This notice can be made by letter or a telephone call to chambers with both sides' counsel on the line.  The Court may then choose to hold a telephonic conference or take other steps to resolve the dispute.  If the Court is unable to resolve the dispute, the Court may authorize the filing of a discovery motion.  LR 37.1.  As stated on the web page of the undersigned, a discovery motion should only be filed *after* having been solicited by the Court.

Accordingly, Plaintiff's Motion to Subpoena State Records and Video Block Footage (ECF No. 25) is denied without prejudice to refiling, if circumstances require.

### VI.  ECF No. 26

In his Motion for Docket in Disposition Form (ECF No. 26), Plaintiff moves the Court "for the Disposition Form per this case as to why was the omission, switch of [counsel], The reason of the change, for the change of [counsel], the omission thereof." ECF No. 26 at PageID #: 251 (brackets added).

Defendants' Notice of Substitution of Lead Counsel (ECF No. 21) was filed on June 17, 2025.  It provides, in relevant part: "Assistant Attorney General, Nicole C. Hendrix, is being substituted for Senior Assistant Attorney General, Jennifer A. Driscoll, as lead counsel for Defendants, Jackson, Wine, Wadolowski, Reghetti, Davis, and Interested Party State of Ohio ("Defendants").  Attorney Driscoll will remain as co-counsel in this matter." *See* ECF No. 21 at PageID #: 233. (footnote omitted).  A copy of ECF No. 21 was served upon Plaintiff by ordinary mail.  *See* ECF No. 21 at PageID #: 234.

21

(4:24CV2141)

Plaintiff's Motion for Docket in Disposition Form (ECF No. 26) is granted.  The Clerk of Court is directed to send Plaintiff, along with a copy of this Memorandum of Opinion and Order: another copy of ECF No. 21 and a print-out of the docket for this case.

### VII.  Conclusion

For all of the foregoing reasons,

The Court dismisses this case without prejudice as to Defendants Corrections Officers Court and Krotzer due to failure to serve.

Defendants Warden Theodore Jackson, Investigator Waylon Wine, Captain Michael Wadolowski, Corrections Officer Reghetti, Warden Davis, and Interested Party State of Ohio's Motion to Dismiss Amended Complaint (ECF No. 17) is granted in part and denied in part.  The Amended Complaint (ECF No. 12-1) fails to state a claim upon which Plaintiff may be granted relief and is dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6) and 28 U.S.C. § 1915(e)(2)(B) as to Deputy Warden Theodore Jackson, Investigator Waylon Wine, Captain Michael Wadolowski, and Warden Davis.  The claims against Corrections Officer Reghetti in his official capacity are dismissed because he is entitled to Eleventh Amendment immunity.  The Eighth Amendment claim for excessive force against Corrections Officer Reghetti in his individual capacity remains.

Plaintiff's Motions for Extension of Time (ECF Nos. 22 and 23) are denied.

Defendants Deputy Warden Theodore Jackson, Investigator Waylon Wine, Captain Michael Wadolowski, Corrections Officer Reghetti, Warden Davis, and Interested Party State of Ohio's Motion to Stay (ECF No. 24) is denied as moot.

22

(4:24CV2141)

Plaintiff's Motion to Subpoena State Records and Video Block Footage (ECF No. 25) is denied without prejudice to refiling, if circumstances require.

Plaintiff's Motion for Docket in Disposition Form (ECF No. 26) is granted.  The Clerk of Court is directed to send Plaintiff, along with a copy of this Memorandum of Opinion and Order: another copy of ECF No. 21 and a print-out of the docket for this case.

A separate Telephonic Case Management Conference Scheduling Order will be issued.

The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.


IT IS SO ORDERED.


___March 4, 2026___                             ___/s/ Benita Y. Pearson___
Date                                            Benita Y. Pearson
                                                United States District Judge

23